JOSEPH J. GORMLEY, III
11 O'ROURKE DRIVE
ROBBINSVILLE, NEW JERSEY 08691
609-923-7788
joeg@savingfatherhood.org
PLAINTIFF, Pro se

| | | |
|---|---|---|
| JOSEPH J. GORMLEY, III,<br><br>Plaintiff,<br><br>v.<br><br>SUSAN CANNAVO GORMLEY; MICHAEL A. WEINBERG, ESQ.; AMY C. GOLDSTEIN, ESQ.; DR. GREGORY W. JOSEPH; DR. MIRIAM HORN; FRANK CANNAVO; CAROLYN CANNAVO; MONICA SHORE; HON. KENNETH S. DOMZALSKI; JOHN and JANE DOES 1-100,<br><br>Defendant(s). | : : : : : : : : : : : : : | **UNITED STATES DISTRICT COURT FOR DISTRICT OF NEW JERSEY**<br><br>**CASE NO.**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>INTRODUCTION</u>

1.  In this action, Plaintiff JOSEPH J. GORMLEY, III seeks damages from Defendants SUSAN CANNAVO GORMLEY; MICHAEL A. WEINBERG, ESQ.; AMY C. GOLDSTEIN, ESQ.; DR. GREGORY W. JOSEPH; DR. MIRIAM HORN; FRANK CANNAVO; CAROLYN CANNAVO; MONICA SHORE; HON. KENNETH S. DOMZALSKI: JOHN and JANE DOES 1-100.

2.  Defendants have acted in a callous and malicious manner with the intent to prevent the Plaintiff from being an active parent for his minor daughter.

3.  The rights of both the parent and the child have been, and are continuing to be, violated. The Court has violated the very essence of the intent of the land's highest Court by not allowing me to enjoy the sanctity of my parental rights. The Defendant, SUSAN CANNAVO

GORMLEY, is conspiring to do this, with the aid of her parents FRANK CANNAVO and CAROLYN CANNAVO, and her counsels MICHAEL A. WEINBERG, ESQ. and AMY C. GOLDSTEIN are perpetuating it; while the Court, the HON. KENNETH S. DOMZALSKI, has ignored the laws and stood in the way of my ability and privilege to have unfettered parenting time with my daughter.

4.      The United States Constitution, and rulings from the highest Court in the land, have lawful devices to protect families from such horrors.

5.      Defendants' actions have caused the Plaintiff to suffer both physically and emotionally. Plaintiff alleges a violation of his constitutional rights, misrepresentation, and intentional infliction of emotional distress.

6.      The Plaintiff has suffered severe emotional distress as a result of the harm brought on by the Defendants' recklessness and is entitled to damages. The Defendant, SUSAN CANNAVO GORMLEY, has acted intentionally and recklessly; in an extreme and outrageous manner; and her conduct is the cause of severe emotional distress. Similarly, the emotional distress that has been suffered by the Plaintiff is palpable, severe, and enduring as a result of Defendant's reckless and malicious behaviors - that have robbed me of valuable and precious time with my daughter, and which will adversely affect my emotional and physical well-being for the rest of my life.

7.      The Defendants, MICHAEL A. WEINBERG, ESQ. and AMY C. GOLDSTEIN, have breached the attorney ethics standards and Rules of Professional Conduct by encouraging the Defendant, SUSAN CANNAVO GORMLEY, to make false statements, file frivolous pleadings, and interfere with my parenting time, thereby contributing to the violation of my 14th Amendment rights.

8. The Defendant, the HON. KENNETH S. DOMZALSKI, has ignored all the laws, refused to permit me to have unfettered parenting time with my daughter, without cause, and has thereby violated my 14th Amendment rights.

## PARTIES

9. Plaintiff JOSEPH J. GORMLEY, III is a resident of the Township of Hamilton, County of Mercer, State of New Jersey.

10. Upon information and belief, Defendants SUSAN CANNAVO GORMLEY is a resident of the Township of Moorestown, County of Burlington, State of New Jersey.

11. Upon information and belief, Defendants MICHAEL A. WEINBERG, ESQ. and AMY C. GOLDSTEIN are attorneys practicing in the State of New Jersey.

12. Upon information and belief, Defendants DR. GREGORY W. JOSEPH; DR. MIRIAM HORN; MONICA SHORE are licensed therapists practicing in the State of New Jersey.

13. Upon information and belief, Defendants FRANK CANNAVO; CAROLYN CANNAVO are the parents of Defendant SUSAN CANNAVO GORMLEY and are residents of the Township of Moorestown, County of Burlington, State of New Jersey.

14. Upon information and belief, Defendant HON. KENNETH S. DOMZALSKI is a judge sitting, or that has sat, in the Courts of the State of New Jersey.

## JURISDICTION AND VENUE

15. This Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331, 1332, 1367.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this District and Parties reside and operate within this district.

## FACTUAL ALLEGATIONS

17.    Plaintiff JOSEPH J. GORMLEY, III, and Defendant SUSAN CANNAVO GORMLEY were married on May 20, 2000. There was one child, a daughter, born (dob: July 6, 2004) of the marriage.

18.    The Defendant SUSAN CANNAVO GORMLEY was taking 29 various prescription drugs to allegedly combat her Multiple Sclerosis.

19.    Sometime in 2002, the Defendant SUSAN CANNAVO GORMLEY entered a rehabilitation facility in order to get off the drugs so that she could have a baby.

20.    On July 6, 2004, our daughter was born seven weeks premature and the Defendant SUSAN CANNAVO GORMLEY had a difficult pregnancy and almost died. Our daughter was in the NICU for 30 days and the Defendant SUSAN CANNAVO GORMLEY was emotionally distraught.

21.    The Defendant SUSAN CANNAVO GORMLEY spent a couple of weeks at her mother's home to help with the care of the newborn child. The Defendant SUSAN CANNAVO GORMLEY moved back into the marital home, however, following a violent altercation with my mother who was in town visiting from New Mexico, she moved back to her mother's residence.

22.    The Defendant SUSAN CANNAVO GORMLEY had been with her mother for six months when she had a violent altercation with her mother. That led to the Defendant SUSAN CANNAVO GORMLEY moving in with her sister. However, after two months, she made the decision to move back in with me.

23.    On or about March 22, 2005, I was made aware that the Defendant SUSAN CANNAVO GORMLEY opened her own bank accounts. Our finances were never combined after this.

24.    On or about August 1, 2009, I signed up our daughter for violin lessons, with an annual tuition of $1,253.90. The Defendant SUSAN CANNAVO GORMLEY (or her family)

purchased a violin for $18,000 and a bow for $6,000.  I was against that expenditure because it was outside of our financial means.

25,    On or about February 7, 2012, the Defendant SUSAN CANNAVO GORMLEY threated to take her own life. Despite my desperate pleas, nobody takes her behaviors seriously.

26.    On or about February 14, 2012, the Defendant SUSAN CANNAVO GORMLEY formally left me, stating that it was because of our financial situation.

27.    On or about August 20, 2012, I was asked to move into the home of the Defendant SUSAN CANNAVO GORMLEY's mother. However my pastors advised against it.

28.    On or about February 12, 2013, I lost my job. This was devastating since I was constantly trying to dig myself out of a deep financial hole.

29.    On or about July 16, 2013, the Defendant SUSAN CANNAVO GORMLEY failed to appear at the closing on sale of the marital home. I was told it was because she was having health issues. Her father, Defendant FRANK CANNAVO, showed up to represent her and insisted that the proceeds be divided because he said that he doesn't trust me to use the proceeds to pay off the debts. However, when I later asked her father where the monies went, he told me, "It's long gone, just move on."

30.    On or about August 21, 2013, I was informed that the Defendant SUSAN CANNAVO GORMLEY had filed a non-dissolution complaint for alimony, child support, and parenting time.

31.    On or about September 16, 2013, I was told for the first time that my daughter was afraid to be alone with me and that they were taking her for counseling.

32.    On or about October 18, 2013, I filed a complaint for Divorce from Bed and Board to protect me financially. The Defendant SUSAN CANNAVO GORMLEY and her mother, Defendant CAROLYN CANNAVO, shared the documents with our daughter.

33.    On or about November 20, 2013, I learned that the Defendant SUSAN CANNAVO GORMLEY had not been depositing (or cashing) my support checks.

34.    On or about November 26, 2013, the Defendant SUSAN CANNAVO GORMLEY and I signed an agreement with our pastor that detailed specific criteria and guidelines to work on our marriage together.  The Defendant SUSAN CANNAVO GORMLEY did not comply with any of the terms of the Agreement. I am kept from having parenting time with our daughter and members of my family are prevented access to her.

35.    On or about March 28, 2013, the Defendant SUSAN CANNAVO GORMLEY began depositing (or cashing) my support checks.

36.    On or about January 30, 2014, it had been an 11-day span since I had been allowed to see my daughter. The days between visits are, at that point, getting longer and longer and I am provided various excuses.

37.    On or about April 14, 2014, I was out with my daughter and mother-in-law, Defendant CAROLYN CANNAVO. When my daughter moved to sit close to me, my mother-in-law stepped in and prevented it. This is a pattern of behavior on the part of my mother-in-law.

38.    On or about April 14, 2014, I was told by Defendant DR. MIRIAM HORN that her role is not reunification but, rather, that she recommended that my daughter should no longer see me.

39.    On or about April 16, 2014, my attorney canceled a scheduled mediation session because the Defendant SUSAN CANNAVO GORMLEY was acting in bad faith and refused me access to my daughter.

40.    On May 31, 2014, my daughter had her violin concert. Her name was changed to Amelia Amore.

41. During the summer of 2014, I had virtually no access to my daughter. When the summer concluded, I was told that the Defendant SUSAN CANNAVO GORMLEY had decided to attend another church with my daughter.

42. On or about November 11, 2014, my mother was prevented access to my daughter when she wanted to pick her up to celebrate a family member's newborn child.

43, On or about December 30, 2014, I filed a motion for custody.

44. On or about February 19, 2015, we entered into an agreement with a 60-day goal toward reunification.

45. On or about February 25, 2015, in accordance with the new Agreement, the Defendant SUSAN CANNAVO GORMLEY, my daughter, and I have a dinner together…during which time my daughter began to "negotiate" with me about visitation times. Her demeanor was one of confidence and determination, and certainly no "fear."

46 On or about March 24, 2015, the Defendant sent me an email with "rules" for dinner with my daughter.

47. On or about April 14, 2015, the Defendant halted weekly dinners with my daughter, thereby violating the Agreement.

48. On or about April 16, 2015, I filed for divorce from the Defendant.

49. On or about June 16, 2015, the Defendant filed an answer and counterclaim.

50. On or about January 11, 2016, a custody neutral assessment was ordered to be completed by March 1, 2016.

51. On or about March 11, 2016, the Court ordered the Parties to attend counseling but states "the Court ORDERS that the parties shall maintain the status quo with respect to the Plaintiffs parenting time," which shall be limited to church attendance at the Defendant and Amelia's church and the Defendant's supervision of that "parenting time." After that report is received and released to the parties by way of a Protective Order, the Court shall schedule this

matter for a further conference/hearing." The judge was made aware that meant that there was no time with my daughter as children were separated from adults in my in-laws' church.

52.    It would be four months before a therapist was chosen and, as it turns out, that therapist doesn't practice reunification therapy.

53.    On or about May 3, 2016, the first meeting with Dr. Joseph took place to work toward a custody neutral assessment.

54.    On or about July 1, 2016, I filed a motion to compel the Defendant SUSAN CANNAVO GORMLEY to enroll my daughter in a private Christian school rather than being home-schooled. This was denied.

55.    On or about July 6, 2016, a report was provided by Lynn M. Levine, Ed. D. This report was inaccurate and sloppily compiled.

56.    On or about July 19, 2016, the Defendant SUSAN CANNAVO GORMLEY filed a motion to halt counseling with my daughter.

57.    On or about July 27, 2016, I filed a cross-motion to appoint a counselor for my daughter.

58.    On or about August 12, 2016, the Court reserved decisions until it receives assessment from Dr. Harry Green.

59.    On or about September 1, 2016 the Judge warned the Parties that the case has gone on a long time and that if it goes to trial, neither Party would be happy.

60.    On or about December 29, 2016, Defendant SUSAN CANNAVO GORMLEY rejected settlement offer for divorce, including expanding visitation.

61.    On or about May 22, 2017, an early settlement panel presented its proposal, which is rejected.

62.    On or about June 19, 2017, Defendant SUSAN CANNAVO GORMLEY made an offer to settle which is rejected.

63. On or about July 27, 2017, Defendant SUSAN CANNAVO GORMLEY deposited (or cashed) three weeks of support checks simultaneously.

64. On August 24, 2017, the Judge planned to set a trial date and barred another expert report which I maintain would help with identifying issues of parental alienation.

65. The Defendant SUSAN CANNAVO GORMLEY has kept my daughter from me over an extended period of time. She has maliciously and recklessly misrepresented facts for no other reason than to manipulate the Courts and prevent me from having unfettered access to my daughter. The Defendant's actions are malicious and reckless, and have caused irreparable harm to me, and my daughter.

66. The Defendants MICHAEL A. WEINBERG, ESQ. and AMY C. GOLDSTEIN have breached the attorney ethics standards and Rules of Professional Conduct by encouraging the Defendant SUSAN CANNAVO GORMLEY to make false statements, file frivolous pleadings, to physically remove my daughter from my custody, and interfere with my parenting time, thereby contributing to the violation of my 14th Amendment rights.

67. The Defendants DR. GREGORY W. JOSEPH; DR. MIRIAM HORN; and MONICA SHORE provided reports based merely on unfounded speculation and unquantified possibilities, aligning themselves with the Defendant SUSAN CANNAVO GORMLEY and simply regurgitated information spewed from her, empowering her to prevent me from being a parent to my daughter.

68. The Defendants, FRANK CANNAVO and CAROLYN CANNAVO, have directly and indirectly interfered with my parenting with my daughter.

69. The Defendant, the HON. KENNETH S. DOMZALSKI, has punctuated the behavior of the Defendant SUSAN CANNAVO GORMLEY by refusing to abide by the laws of the highest court in the land, and allow me any parenting time, and have thereby violated my 14th Amendment rights.

70. The Defendants' behaviors and actions were so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is atrocious and utterly intolerable in a civilized and lawful community. The Defendants' actions are a direct cause of the Plaintiff's emotional distress, a distress so severe that no person could possibly be expected to endure such distress.

**COUNT ONE**
**<u>VIOLATION OF 14TH AMENDMENT</u>**

71. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

72. The United States Supreme Court has weighed in a number of times on the parent-child relationship. In <u>Moore v. East Cleveland</u>, 431 <u>U.S.</u> 494 (1977) the Supreme Court held that "When the government intrudes on the choices concerning family living arrangements, the Court must examine carefully the importance of the government interests advanced." In <u>Lassiter v. Department of Social Services</u>, 452 <u>U.S.</u> 18 (1981) the Court held that "…a parent's desire for and right to "the companionship, care, custody, and management of his or her children" is an important interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection." And in <u>Troxel v. Granville</u>, 530 <u>U.S.</u> 57 (2000) the Court emphasized in its opinion that it is has long recognized that a parent's interests in the nurture, upbringing, companionship, care, and custody of children are generally protected by the Due Process Clause of the Fourteenth Amendment.

73. The rights of both the parent and the child are being violated. The Court has violated the very essence of the intent of the land's highest Court by not allowing me to enjoy the sanctity of my parental rights. The Defendant SUSAN CANNAVO GORMLEY is conspiring to do this, and the counsel that have represented her, Defendants MICHAEL A. WEINBERG, ESQ. and AMY C. GOLDSTEIN, have perpetuated it while the Court, the Defendant the HON. KENNETH S. DOMZALSKI, has ignored the laws and stood in the way of my ability to have parenting time

with my child. The United States Constitution, and rulings from the highest Court in the land, have lawful, protective devices to protect families from such horrors.

74.     As a direct and proximate result of these malicious and conscious wrongful actions, the Plaintiff has suffered, and will continue to suffer indefinitely, severe emotional distress, and damages, and is entitled to damages from the Defendants, including punitive damages, to be determined at trial.

## COUNT TWO
## MISREPRESENTATION

75.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

76.     The Defendant SUSAN CANNAVO GORMLEY has provided false information to the Court and government agencies for no other reason than to commit a fraud and prevent me from having contact and parenting time with my daughter.

77.     The Defendants DR. GREGORY W. JOSEPH; DR. MIRIAM HORN; and MONICA SHORE provided reports based merely on unfounded speculation and unquantified possibilities, aligning themselves with the Defendant SUSAN CANNAVO GORMLEY and simply regurgitated information spewed from her, empowering her to prevent me from being a parent to my daughter.

78.     As a direct and proximate result of these malicious and conscious wrongful actions, the Plaintiff has suffered, and will continue to suffer indefinitely, severe emotional distress, and damages, and is entitled to damages from the Defendants, including punitive damages, to be determined at trial.

## COUNT THREE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

80.    Defendants willfully, intentionally, and recklessly inflicted physical and emotional injury on the Plaintiff by subjecting the Plaintiff to outrageous treatment beyond all bounds of decency, taking away the Plaintiff's parental rights, depriving the Plaintiff of all parenting time with the child, which will affect her physically and emotionally for the rest of her life.

81.    The Defendants have acted intentionally and recklessly; in an extreme and outrageous manner; and their conduct is the cause of severe emotional distress. . See, e.g., Tuttle v. Atlantic City R.R. Co., 66 N.J.L. 327 (E. & A. 1901); Consolidated Traction Co. v. Lambertson, 60 N.J.L. 457, 458 (E. & A. 1897); Greenberg v. Stanley, 51 N.J. Super. 90, 106 (App. Div. 1958), mod. on other grounds, 30 N.J. 485 (1959); Justesen v. Pennsylvania R.R. Co., 92 N.J.L. 257 (Sup.Ct. 1919); Ward v. West Jersey & S.R.R. Co., 65 N.J.L. 383 (Sup.Ct. 1900); see also Graf v. Taggart, 43 N.J. 303, 312-313 (1964). Further, in Maldonado v. Leeds, 177 N.J. 487 (N.J. 2003) the Court opined that severe emotional distress should not be dismissed because of any lapse of time but, rather, the Court must fairly judge the actual impact of such distress.

> "[I]n order to evaluate fairly whether plaintiff's emotional distress was idiosyncratic, the average person must be one similarly situated to the plaintiff." Taylor, supra, 152 N.J. at 516, 706 A.2d 685.  In our view, a jury may reasonably find that plaintiff did, in fact, suffer "serious psychological sequelae," Trisuzzi, supra, 285 N.J.Super. at 27, 666 A.2d 543, and that her emotional distress is "palpable, severe, or enduring" as a result of witnessing her son's accident. Decker, supra, 116 N.J. at 431, 561 A.2d 1122. Under the circumstances presented, plaintiff's claims for emotional distress cannot be dismissed "as a matter of law."

Their conduct is "so outrageous in character, and so extreme in degree, that it goes beyond all possible bounds of decency, and is so atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts section 46 cmt. d (1965). The Defendants' conduct is

more than just malicious and intentional; it goes beyond mere insults, indignities, threats, annoyances, or petty oppressions.

82.    Defendants' actions have caused, and will continue to cause, the Plaintiff to be deprived of any normal physical and emotional relationship with his daughter.

83.    The Defendants' actions have, and will continue to cause, the Plaintiff to suffer damage, severe trauma, humiliation, social isolation, depression, severe physical and emotional distress as well as prolonged illness, painful and permanent physical and emotional scarring.

84.    As a direct and proximate result of these malicious and conscious wrongful actions, the Plaintiff has suffered, and will continue to suffer indefinitely, severe emotional distress, and damages, and is entitled to damages from the Defendants, including punitive damages, to be determined at trial.

## DECLARATION

Plaintiff declares that he is not an expert in the law but that he does know right from wrong and intends no one harm by his word or deed. Therefore, if any human being is damaged by any statement(s) herein and informs Plaintiff of the facts, he will sincerely make every effort to amend his allegations. Plaintiff hereby reserves the right to amend and make amendment to this document as necessary in order that the truth may be ascertained and proceedings justly concluded. If a party given notice by means of this document has information that would controvert and overcome this affidavit, he/she is respectfully requested to advise Plaintiff IN WRITTEN AFFIDAVIT FORM, sworn/affirmed true, correct, complete, and not misleading upon the Affiant's full commercial liability, within thirty (30) days from the receipt hereof, if Affiant can prove with particularity, by stating all requisite, evidentiary facts and all requisite, actual law – not mere ultimate facts and conclusions of law – that Plaintiff's declarations herein are substantially and materially false, sufficiently to alter materially their status and factual statements. Silence stands as consent to, and tacit approval of, the factual declarations herein being established as matters of law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays this court to enter judgments against Defendants, as follows:

A.  For Declaratory Judgment;

B.  For Statutory Damages in an amount to be proven at trial;

C.  For Punitive Damages in an amount to be proven at trial;

D.  For Compensatory Damages in an amount to be proven at trial; and

E.  For such other further relief as the court may deem just and proper.

Dated: October 3, 2017

_____

JOSEPH J. GORMLEY, III, PLAINTIFF